UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALBERT DOERBECKER, ADMINISTRATOR
OF THE ESTATE OF KURT DOERBECKER,
et al.,

                             Plaintiffs,

                                  **ORDER**
            -against-                      CV 12-2204 (LDW)(ARL)

COUNTY OF NASSAU, et al.,

                             Defendants.
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Before the court is the plaintiffs' motion dated April 30, 2013, seeking to compel the

defendants or nonparty Nassau County District Attorney's Office (the "DA's Office") to produce

all drafts of the "Investigation Into the Death of Kurt Albert Doerbecker" dated July 9, 2012 (the

"DA report"). The DA's Office opposes the motion by letter dated May 4, 2013. For the reasons

stated below, the plaintiffs' motion is granted, in part.

      This civil rights action stems from the alleged wrongful shooting of the plaintiffs' son,

Kurt Doerbecker. According to the plaintiffs, prior to commencing the action, they sent the DA's

Office a letter demanding the preservation of all documents relating to the investigation of the

shooting. In August 2012, after the action was commenced, the plaintiffs served the defendants

with a document request, seeking, among other things, the complete DA file regarding the

shooting and killing of Kurt Doerbecker. In January 2013, the plaintiffs also served the DA's

Office with a subpoena, which demanded the production of all documents concerning the

investigation of Kurt Doerbecker's death.

      At the initial conference held before the undersigned on October 10, 2012, the parties

discussed the defendants' outstanding responses. Counsel for the defendants reported that the

DA's investigation of the Nassau County Police Department remained open preventing them from responding to the plaintiffs' requests. The court acknowledged the fact that the investigation could take until December, but expressed the view that the open investigation would not work to avoid production of documents. Two weeks later, defense counsel received the DA file and promised plaintiffs' counsel that "non-privileged documents and a privilege log" would be forthcoming. However, a month passed and the defendants failed to respond.

On November 29, 2012, the plaintiffs moved to compel the defendants to respond to the discovery requests, to produce a privilege log and to amend their initial disclosures, but they failed to attach the discovery requests at issue or to outline the specific requests that were outstanding making it impossible for the court to rule on that portion of the application. Nonetheless, because the only issue raised by the defendants in terms of the DA file was the preparation of the Confidentiality Agreement, the court set dates by which the parties were to exchange drafts of the Confidentiality Agreement and file the final proposed Agreement with the court, which they did.

On January 14, 2013, the Stipulation and Proposed Confidentiality Agreement was so ordered. According to the plaintiffs' counsel, two days later, defense counsel contacted him to obtain his consent for an extension of the court ordered deadline to respond to the outstanding requests. Initially plaintiff's counsel would not give his consent because the responses were already five months late and he was concerned that the parties would be forced to engage in timely motion practice concerning privileges. However, defense counsel assured him that he was also representing the DA's Office in connection with the subpoena and would be producing all of the DA's notes, memoranda and other internal documents without asserting a privilege thereby alleviating his concern regarding the extension. Although the defendants never sought approval for the extension from the court, the plaintiffs did consent to the extension based on defense

2

counsel's representation, as reflected in the email exchanges between counsel. The defendants finally responded to the requests on February 1, 2013.

The plaintiffs contend that despite defense counsel's representation, the responses they received were inadequate because neither the defendant nor the DA's Office produced drafts of the DA report that were  attached to the internal emails relating to the investigation. They argue that defense counsel waived any of privileges that are now being asserted on behalf of the DA's Office when he sought the plaintiffs' consent to the extension. In addition, the defendants did not serve the plaintiffs with a privilege log until April 24, 2013, after the parties had discussed the matter for over two months. The plaintiffs further argue that defense counsel's position that the plaintiffs did not demand emails or drafts of the DA report is untenable because the plaintiffs requested the complete DA file and all documents related to the investigation in both the document request and the subpoena.

The document request served on the defendants sought "Any and all documents concerning the investigation . . . of Kurt Doerbecker's death, including without limitation the following: evidence vouchers, applications for search warrants, reports, notes, statements," and so on. The subpoena mirrored the language utilized in the document request. The use of the phrase "including without limitation" is plainly illustrative rather than exhaustive and the plaintiffs' failure to specifically demand emails or drafts is not dispositve of the instant dispute.

Nonetheless, the drafts of the DA report are subject to the deliberative process privilege. The deliberative process privilege protects from disclosure "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Central Partnership. v. Cuomo,* 166 F.3d 473, 482 (2d Cir. 1999). "To qualify for the deliberative process privilege, a document must be both

3

'predecisional' and 'deliberative.'" *Id.*  Moreover, the deliberative process privilege is a qualified

privilege, and does not protect from disclosure purely factual material.  *Armtek Corp. v. United*

*States,* 1996 U.S. Dist. LEXIS 9475, at *3  (W.D.N.Y.  June 20, 1996)

   The factors considered by the Second Circuit in determining whether a document is

predecisional include: "whether the organization asserting the privilege can (1) 'pinpoint the

specific . . . decision to which the document correlates' and (2) 'verify that the document precedes,

in temporal sequence, the 'decision' to which it relates." *Automobile Club of New York, Inc. v. The*

*Port Authority of N.Y. and N.J.,* 2013 U.S. Dist. LEXIS 65868 *8 (S.D.N.Y/ May 8, 2013).  Here,

the affidavit of Douglas Noll makes clear that the drafts were predecisional materials compiled for

the purpose of enabling the DA to determine whether or not a prosecution was warranted in

connection with the death of Kurt Doerbecker.  "A document is deliberative when it is 'actually . . .

related to the process by which [decisions] are formulated." *Id.*  The draft memoranda at issue

were prepared by assistant district attorneys.  According to the privilege log, the drafts contain

handwritten notations and highlighting and were intended to be a mechanism to provide the DA

with the assistants' uninhibited opinions about the prosecution.  Moreover, although the names of

the assistant district attorneys are not reflected in the privilege log, the DA's office did indicate that

all of the draft memoranda were prepared by assistants who lack final decision making authority.

*See id.* (relationship between authors and recipient relevant to determination).  Accordingly, the

drafts are protected by the privilege, except to the extent that the drafts contain factual material.

   The plaintiffs argue, however, that the DA's Office has waived the privilege by agreeing to

produce all of its "notes, memoranda, and other internal documents" and indicating that it would

not withhold documents on the basis of "attorney-client, work-product, law enforcement or any

other privilege."  In fact, in confirming the parties' agreement, defense counsel, who also

represented the DA's Office in connection with the subpoena, clarified that the DA's Office would only assert a public interest privilege.  Although defense counsel does not dispute that the DA's Office waived any privilege with respect to documents contained in the DA file, counsel argues that he never considered drafts that were attached to emails to be part of the DA file.  Although counsel's reliance on this "apparent misunderstanding" is troubling, especially in light of the defendants' conduct throughout the discovery process, given the prejudice that might result from disclosure of the drafts, the court will not deem counsel's representation regarding the disclosure of the DA file to be a waiver of the deliberative process with respect to drafts of the DA report.

Accordingly, the plaintiffs' motion is granted, in part.  The DA's Office is directed to provide the plaintiffs with redacted copies of the drafts as indicated above.


Dated: Central Islip, New York            **SO ORDERED:**
       May 21, 2013

                                          _____/s/_____
                                          ARLENE R. LINDSAY
                                          United States Magistrate Judge