UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------*

ALBERT DOERBECKER, Administrator of
the Estate of KURT DOERBECKER;
ALBERT DOERBECKER; and MARIE
DOERBECKER,

                   Plaintiffs,

   -against-

COUNTY OF NASSAU; POLICE OFFICER
SHEVACH BERKOVITS; SGT. NICHOLAS
STILLMAN; SGT. JACQUELINE LEWIS;
LT. JOHN KELLY; LT. JOHN HERMANN;
POLICE OFFICER EDWARD CARLSON;
POLICE OFFICER ADAM WOR; POLICE
OFFICER ROVERT GAROFALO; POLICE
OFFICER JARED BARRETTI; POLICE OFFICER
KRYSTAL DELUCA; AND JANE AND JOHN
DOES 1-10,

                  Defendants.
-----------------------------------------------------------*

12 Civ. 2204 (LDW)(ARL)


## DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS
## TO MAGISTRATE JUDGE LINDSAY'S MAY 21, 2013 ORDER


Leahey & Johnson, P.C.
120 Wall Street
New York, New York  10005
212-269-7308

Attorneys for the Defendants and
The District Attorney's Office of
The County of Nassau, a non-party

June 12, 2013

## TABLE OF CONTENTS

Preliminary Statement..................................................................................1

ARGUMENT.............................................................................................4

I.      Standard of Review............................................................4

II.     The Drafts of the DA's Report Are Protected From Disclosure
        Pursuant to the Deliberative Process Privilege...................................8

III.    The Privilege Was Not Waived.................................................10

IV.     The Magistrate Did Not Abuse Her Judicial Discretion.....................18

CONCLUSION...........................................................................................21

TABLE OF AUTHORITIES

## CASES

Harper v. GEICO
826 F.Supp.2d 454 (2011), Wexler, J. ……………………………………………………5

Madison Stock Transfer v. Netco, et al.
CV 06-3926, 2008 U.S.LEXIS 16121 (2008) Wexler, J. ……………………………………...5

Runza v. Walmart Stores
CV 07-4146, 2008 U.S.Dist. LEXIS 6921 (2008), Wexler, J. …………………………………5

Madison Stock Transfer v. Netco, et al.
CV 06-3926, 2007 U.S.LEXIS 73698 (2007), Wexler, J. ……………………………………...5

Bodkin v. Garfinkle,
CV 05-4306, 2007 U.S.Dist. LEXIS 6571 (2007), Wexler, J………………………………….5

TFWS, Inc. v. Franchot
572 F.3d 186, 194 (4th Cir. 2009)………………………………………………………………6

Ross Univ. School of Med. Ltd., v. Brooklyn-Queens Health Care et al.
09-cv-1410, 2013 U.S.Dist. LEXIS 45949, at 14 (E.D.N.Y., March 28, 2013, Matsumoto, J.).6

Thompson v. Lynbrook Police Department
172 F.R.D. 23 at 26-27 (E.D.N.Y., 1997) ……………………………………………………...8

Davis v. City of New York
2012 U.S.Dist. LEXIS 24834 (10 Civ. 699 (SAS)(HBP), Pitman, U.S. Mag. J. ……………..9

Tigue v. United States DOJ
312 F.3d 70, 2nd Cir. 2002 (Sotomayor, J.) ………………………………………………….17

Cooter & Gell v. Hartmarx Corp.
496 U.S. 384, 405, 110 S. Ct. 2447 (1990) …………………………………………………...18

Zervos v. Verizon N.Y. Inc.
252 F.3d 163 (2nd Cir. 2001) …………………………………………………………………18

Baez v. Hennessy
853 F.2d 73 (2nd Cir. 1988) …………………………………………………………………20

U.S. v. Williams
524 F.3d 209 (2nd Cir. 2008) …………………………………………………………………20

Dinler v. City of New York
607 F.3d 923 (2nd Cir. 2010) ……………………………………………………………...20

## STATUTES AND RULES

Local Civil Rule 72.2………………………………………………………………….…4

Federal Rules of Civil Procedure 72……………………………………………………...…4

The Defendants respond herein to the Plaintiffs' objections to the Order of Magistrate Judge Lindsay's May 21, 2013 Order, in accord with the Order of District Court Judge Leonard D. Wexler dated May 29, 2013.

## Preliminary Statement

On the night of August 29, 2011, the Nassau County Police Department received two separate calls in a relatively short period of time – the first call reported a public disturbance at the Buoy Bar located in Point Lookout, Long Island, where the perpetrator threatened to harm patrons of the bar; and the second call reported an armed break-in at a residence also located in Point Lookout. Separate police units responded to each call. The civilian witnesses at Buoy Bar provided the responding police unit with a physical description of the decedent, Kurt Doerbecker, as well as the decedent's name and home address. The homeowner provided the responding police unit with a physical description of the trespasser which matched the physical description of the decedent provided by the civilian witnesses at the Buoy Bar. The two separate police units then proceeded to the Doerbecker residence.

Upon arriving at the Doerbecker residence, the police attempted to speak with the decedent. However, they were prevented from doing so by Plaintiffs who barricaded themselves inside the home. The police, having probable cause to believe Kurt Doerbecker was armed when they arrived at the Doerbecker residence, were also led to believe by Plaintiff Albert Doerbecker that the Doerbecker residence contained firearms. Based upon the events and circumstances, the responding police officers reasonably believed the situation was volatile. The police surrounded the Doerbecker residence, and three uniformed officers – Berkovits, Badolato, and Walters – took positions in the backyard.

1

Eyewitness accounts of the incident establish the following irrebuttable facts: The decedent was seen by Officer Badolato climbing out of a window of the Doerbecker residence into the backyard, which provided direct access to the nearby Buoy Bar. The three officers stationed in the backyard immediately identified themselves as police officers and ordered the decedent to stop. The decedent ignored their orders and attempted to punch Officer Badolato, who was able to avoid the assault. The decedent then charged directly at Officer Berkovits with a raised arm holding a 9 inch knife with a clear intent to cause serious physical harm or death to Officer Berkovits. The three officers continued to order the decedent to stop as Officer Berkovits attempted to avoid injury to himself by backing away from the decedent. Fearing for his life and the life of Officer Walters who was standing next to him, Officer Berkovits fired his weapon at the decedent. The decedent did not lower his knife, and, as Officer Berkovits was firing, the decedent turned to attack Officer Hoscar Walters. Officer Berkovits discharged his weapon a total of three times, and the third shot struck the decedent in the head. The decedent was killed by that shot and fell near where Officer Walters was standing. The Nassau County Police recovered the nine inch kitchen knife wielded by the decedent.

After a lengthy and extensive investigation, the Nassau County District Attorney's Office reported that following its review of this matter it would not prosecute Police Officer Berkovits. The Nassau County District Attorney's Office issued its final report, entitled "Investigation into the Death of Kurt Albert Doerbecker" on July 9, 2012, and authorized the final report to be made available to the public. A copy of that Final Report is annexed to the Affidavit of Christopher Delamere Clarke, Esq., as Exhibit "H". This report was made available on Newsday's website the following day.

The Plaintiffs' counsel now claim that their initial discovery demands as well as a subpoena they served upon the Nassau County District Attorney's Office included a request that the District Attorney's inter-office emails, and the attachments thereto, which included the initial pre-decisional drafts of this final report, be produced in discovery. The Court will note that a plain reading of the discovery demand and subpoena did not demand production of such items. "Documents" and "Email" are separate and distinctly defined terms within the Plaintiff's own demands (see Clarke Decl., Exh. "E"). Plaintiffs only ever demanded documents from the non-party.

The Nassau County District Attorney's Office does not agree that such items were ever demanded in discovery. Nevertheless, in an effort amicably resolve this unnecessary discovery dispute, the NCDA provided redacted copies of inter-office emails in discovery while the attachments thereto were not produced as they are privileged. The attachments were identified as pre-decisional drafts of the District Attorney's final report that the District Attorney's Office has refused to produce on the basis that such drafts are protected from discovery pursuant to the deliberative process privilege. A privilege log was timely provided after several telephone conferences failed to resolve the dispute (see Clarke Decl, Exh. "I" and "J"). The privilege log included a statement from counsel regarding the feigned issue raised by Plaintiffs' counsel as to the claim of a waiver of this privilege.

Plaintiffs' counsel filed a motion before Magistrate Judge Lindsay seeking to compel production of these drafts on the specious claim that the Nassau County District Attorney's

3

Office waived all privileges. Plaintiffs' counsel has conceded in his objections filed with this Court that the drafts at issue would otherwise be protected from disclosure on the basis of the deliberative process privilege. Defendants maintain that such privilege was never waived and that the NCDA's emails and attachments including pre-decisional drafts of its final report were never demanded in discovery. After engaging in a balancing test, Magistrate Judge Lindsay granted Plaintiffs' motion in part, and denied their motion in part. Magistrate Judge Lindsay ordered that the drafts are protected by the privilege, except to the extent that the drafts contain factual material. Exercising her discretion, Magistrate Judge Lindsay ruled that she would not deem counsel's representations regarding disclosure of the DA's file to be a waiver of the privilege and directed the DA's Office to produce redacted copies of the drafts. Plaintiffs now object to this ruling and have appealed the Magistrate's Order to this Court.

## ARGUMENT

### I.

### Standard of Review

Pursuant to Local Civil Rule 72.2 in the Eastern District of New York a Magistrate Judge is assigned to each case upon the commencement of the action and is empowered to act with respect to all non-dispositive pretrial matters unless the assigned District Judge orders otherwise. This Court has not ordered otherwise. The assigned Magistrate Judge in this matter, Hon. Arlene R. Lindsay, ruled on a non-dispositive pretrial discovery dispute regarding privileged materials (see Order dated May 21, 2013). Plaintiffs have filed objections pursuant to Fed.R.Civ.P. 72. This Court has long recognized that pursuant to Rule 72 of the Federal Rules of Civil Procedure, it will modify or set aside any part of any order appealed from only if such matter is clearly

4

erroneous or contrary to law. Harper v. GEICO, 826 F.Supp.2d 454 (2011), Wexler, J. (appeal denied); Madison Stock Transfer v. Netco, et al., CV 06-3926, 2008 U.S.LEXIS 16121 (2008); Wexler, J. (appeal denied); Runza v. Walmart Stores, CV 07-4146, 2008 U.S.Dist. LEXIS 6921 (2008), Wexler, J. (appeal denied); Madison Stock Transfer v. Netco, et al., CV 06-3926, 2007 U.S.LEXIS 73698 (2007), Wexler, J. (appeal denied); Bodkin v. Garfinkle, VC 05-4306, 2007 U.S.Dist. LEXIS 6571 (2007), Wexler, J. (appeal denied).  There has been no showing that Magistrate Judge Lindsay's decision was clearly erroneous or contrary to law and we ask that this Court overrule the Plaintiffs' objections.

Plaintiffs' objections fail to identify or to articulate with specificity the alleged error committed by the Magistrate, and fail to demonstrate that the decision is contrary to law.  In fact, Plaintiffs' objections to this Court are devoid of any compelling or substantive argument.

Plaintiffs' Counsel admits that Magistrate Judge Lindsay "got most of it right" and also concedes that "...the drafts of the report would implicate the qualified deliberative process privilege" (see Plaintiffs' Objections at page 1).  Thus, there is little dispute here that the Magistrate properly recognized that the deliberative process privilege applies to the drafts at issue and that the drafts are, therefore, protected from disclosure.  Magistrate Judge Lindsay ordered that the drafts be produced in redacted form, ruling that the drafts are protected by the privilege "except to the extent that the drafts contain factual material." (see Order, at page 4). Given Plaintiffs' counsel's concessions that the drafts themselves are protected by the privilege, they cannot claim surprise that the Defendants and the NCDA have relied upon such privilege to resist their disclosure.

To prevail on their application, Plaintiffs carry the burden and must establish to this Court's satisfaction that Magistrate Lindsay's Order was clearly erroneous or contrary to law. The "clearly erroneous" standard places a weighty burden upon the party raising the objection. To satisfy this heightened deferential standard of review, the Fourth Circuit vividly articulated that a ruling can be shown to be "clearly erroneous" only when it can be concluded that the challenged decision is not "just maybe or probably wrong, it must strike us with the force of a five-week-old, unrefrigerated dead fish". TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009). Recently, in Ross v. Brooklyn-Queens Health Care, District Judge Kiyo A. Matsumoto defined the heightened standard of review in the setting of a Rule 72 objection, as follows:

> Pursuant to Federal Rule of Civil Procedure 72(a), when reviewing a non-dispositive ruling of a magistrate judge, a district court shall "modify or set aside any part of [a magistrate judge's order] that is clearly erroneous or is contrary to law." Rule 72(a) provides for "a highly deferential standard of review." *Wynder v. McMahon*, No. 99-cv-772, 2008 U.S. Dist. LEXIS 1945, 2008 WL 111184, at 1 (E.D.N.Y. Jan. 9, 2008) (internal quotation marks omitted). Rule 72(a) "'imposes a heavy burden on the objecting party,' and 'only permits reversal where the magistrate judge abused [his or her] discretion.'" *Cadet v. Miller*, No. 05-cv-5042, 2007 U.S. Dist. LEXIS 90337, 2007 WL 4324102, at 1 (E.D.N.Y. Dec. 7, 2007) (quoting *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)).
>
> "Under the clearly erroneous standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Nielsen v. N.Y.C. Dep't of Educ.*, No. 04-cv-2182, 2007 U.S. Dist. LEXIS 48637, 2007 WL 1987792, at 1 (E.D.N.Y. July 5, 2007) (internal quotation marks omitted). Instead, "'the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Regan v. Daimler Chrysler Corp.*, No. 07-cv-1112, 2008 U.S. Dist. LEXIS 55029, 2008 WL 2795470, at 1 (E.D.N.Y.

6

July 18, 2008); accord *In re Comverse Tech., Inc. Deriv. Litig.*, No. 06-cv-1849, 2006 U.S. Dist. LEXIS 88312, 2006 WL 3511375, at 2-3 (E.D.N.Y. Dec. 5, 2006). Moreover, a magistrate judge's "order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (internal quotation marks omitted). See: Ross Univ. School of Med. Ltd., v. Brooklyn-Queens Health Care et al., No. 09-cv-1410, 2013 U.S.Dist. LEXIS 45949, at 14 (E.D.N.Y., March 28, 2013, Matsumoto, J.)

The Plaintiffs' submission is entirely silent as to the standard of this Court's review, and they are similarly silent in regard to the manner in which they contend that they have met their burden. They do not argue that the Magistrate's decision was clearly erroneous or that her decision was contrary to the law. Accordingly, having failed to establish that Magistrate Judge Lindsay's Order failed either part of this two-prong review, Plaintiffs' objections should be overruled and the appeal denied in its entirety.

Based upon the submissions before the Court the parties and the Court universally agree that the subject drafts are protected from disclosure by the privilege. Plaintiffs' only objection to the Magistrate's ruling was that she failed to rule that the privilege had been waived. Upon this record it should be made clear that the deliberative process privilege was never waived by the Nassau County District Attorney's Office. Further, even assuming arguendo that the privilege was not timely raised, it was well within Magistrate Judge Lindsay's discretion to recognize the privilege, its application to the subject drafts and then to rule accordingly that "...given the prejudice that might result from disclosure of the drafts, the court will not deem counsel's representation regarding disclosure of the DA file to be a waiver of the deliberative process with respect to drafts of the DA report." (See Order, at 5) This is certainly consistent with the

7

opposition raised before her that, among other things, Plaintiffs had failed to articulate the need for such disclosure[1]. The Magistrate clearly engaged in a balancing of the parties' interest and that of the non-party District Attorney's Office and concluded that disclosure was not proper.

While we remain troubled by the Magistrate's remarks as to its impression of the conduct of the defense in this case, the Magistrate's ultimate decision denying the Plaintiffs' application seeking to compel production of the privileged portions of the subject drafts was correct. We ask this Court to overrule Plaintiffs' objections and deny their appeal.

## Point II.

### The Drafts of the DA's Report Are Protected From Disclosure
### Pursuant to the Deliberative Process Privilege

Plaintiffs do not dispute that the drafts of the NCDA's final report are privileged documents, immune from disclosure pursuant to the deliberative process privilege and that the NCDA would be profoundly prejudiced were this Court to compel production. Thompson v. Lynbrook Police Department, 172 F.R.D. 23, 26-27 (E.D.N.Y., 1997). Plaintiffs' initial application before Magistrate Judge Lindsay and their objections filed with this Court do not deny, refute or contest the applicability of the privilege. Moreover, plaintiffs failed to establish in their initial motion the relevance of the items sought and/or their compelling need for these

---

[1] In Thompson v. Lynbrook Police Dept., 172 F.R.D. 23 at 28 (E.D.N.Y. 1997), the Court discussed the approach to be followed in determining whether to permit the privilege to prevent disclosure. These issues to consider include a balance between the parties' interest for and against disclosure. The factors to consider include the relevance of the evidence sought; the availability of other evidence; the issues involved in the litigation; the government's role in the litigation; the possibility of future timidity and other effects on government employees whose secrets had been disclosed; society's interest in judicial fact finding and the public interest in scrutinizing the government's decision making process. Plaintiffs have never articulated any compelling need for disclosure of the drafts of a report which include the pre-decisional analysis of these events. The plaintiffs have already been provided with the District Attorney's Office's entire file and therefore have available to them the same materials that were available to the District Attorney's Office when it assessed these facts and decided that there was no indictable offence.

documents. Inasmuch as counsel has been in possession of the District Attorney's entire file since February 1, 2013, and thus possess the same materials available when the District Attorney's Office engaged in their own independent analysis, they cannot articulate any such compelling need, or prejudice suffered as a result of Magistrate Judge Lindsay's partial denial of their motion to compel. Where the demanding party fails to demonstrate an adequate basis, the privilege should not be pierced. Davis v. City of New York, CV 10-24834, (S.D.N.Y.) 2012 U.S.Dist. LEXIS 24834, February, 2012, Pitman, U.S.Mag.J.. As Magistrate Judge Lindsay concluded, and as Plaintiffs' counsel presently concede, this privilege pertains precisely to these drafts as they reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions are formulated. The rationale behind the deliberative process privilege is to assure that subordinates within an agency feel free to provide the decision maker with uninhibited opinions and recommendations. Thompson, id., at 26.

After efforts to resolve this dispute proved fruitless, Plaintiffs' counsel agreed to accept, and the Defendants agree to prepare, a privilege log pertaining to the subject drafts (see Clarke Decl., Exh. "I" and "J". That privilege log, particularized objections and a supporting Affidavit from a senior member of the staff of attorneys at the Nassau County District Attorney's Office was provided to the Court and counsel and are annexed to the Clarke Affidavit as Exhibits "J" and 'L". Therefore, Plaintiffs' reliance upon cases in which the privilege had been waived based upon a defective privilege log or the absence of a supporting Affidavit is unavailing as these cases are distinguishable on the facts. Plaintiffs cannot and have not mounted any objection premised upon the adequacy of the privilege log and supporting affidavit provided. The Magistrate considered the affidavit provided by a senior member of the Nassau County District

9

Attorney's Office and was satisfied that the subject documents are properly protected from disclosure as said affidavit established the several criteria that need be evaluated as stated in Thompson, and further established the prejudice that would suffer were the Court to compel production.

## Point III

### The Privilege Was Not Waived

During the course of discovery the Plaintiffs' demanded that the County of Nassau produce the District Attorney's file with respect to its investigation of this incident. Their demand for those materials was included within the Plaintiff's "First Combined Discovery Requests" dated August 6, 2012 as part of their Document Demand Number 3. A copy of this demand is annexed to the Clarke Affidavit as Exhibit "E". On December 21, 2012 the Plaintiffs served a subpoena duces tecum upon the Nassau County District Attorney's Office requesting these and other materials. A copy of the subject subpoena is annexed hereto the Clarke Affidavit as Exhibit "F". On February 1, 2013, the Nassau County District Attorney's Office responded to the subject subpoena and document request. A copy of the 439 pages produced by the Nassau County District Attorney's Office in full and complete response is annexed to the Clarke Affidavit as Exhibit "C".

It is this firm's understanding that prior to our retention in this matter there were several discovery related conferences as well as extensions of discovery consented to by Plaintiffs' counsel and later directed by the Court. This firm first appeared on behalf of the Defendants in this matter on December 13, 2012. We acted with dispatch in getting up to speed with regard to every aspect of this matter. To permit this firm time to become familiar with this complex and

10

document intensive file, Plaintiff's counsel consented to, and the Court ordered, an extension of time to January 18, 2013 for the Defendants' to respond to the Plaintiff's discovery demands. During that time period lead counsel for this firm sustained a physical injury that left him housebound for over a week. Because of that, Defendants and non-party Nassau County District Attorney's Office subsequently sought a further, brief extension of time. Despite several setbacks and a personal injury, by February 1, 2013, we had secured and disclosed substantially all of the materials that Plaintiff's counsel had demanded in discovery and had asserted timely objections to the vastly overbroad discovery demands served by the Plaintiffs' counsel. We completed the necessary confidentiality agreement and successfully moved this Court to bifurcate the Monell claims and to stay Monell-related discovery. We similarly served Plaintiffs with the Defendants' demands for discovery as well as demands for interrogatories. Therefore, in less than two months' time from the moment this firm first appeared in this case we moved with celerity in responding to outstanding demands and in moving discovery forward quickly.

Shortly after this firm appeared on behalf of the Defendants in this matter, on or about December 29, 2012 Plaintiffs' served a subpoena duces tecum upon the Nassau County District Attorney's Office (see Clarke Decl. Exh. "A"). Counsel for the parties met and agreed to that subpoena by January 18, 2013, the same deadline set for Defendants' responses to Plaintiff's discovery demands. Because of the injury sustained by the lead counsel for the defense, we asked Plaintiffs' counsel for a short two week enlargement of that deadline as to the subpoena to which they agreed. During the discussion of that extension Plaintiffs' counsel advised that in order to secure his clients' consent he needed to know that we would be moving forward in a meaningful way with regard to disclosure, and wanted to be sure that we would produce the NCDA's file and the NCPD's file largely intact. Under a plain reading of the document demand

11

and the subpoena and having consulted with the non-party NCDA's office, we agreed that we would produce that file largely intact and would likely redact names and identifying information as to the civilian witnesses identified therein. At no time was there ever any discussion pertaining to emails or pre-decisional drafts of the NCDA's final report. This agreement was reduced to an email exchange between counsel. The non-party Nassau County District Attorney's Office abided its agreement to provide Plaintiff's counsel with its entire file and did so on February 1, 2013.

Shortly after receiving these documents the parties engaged in a series of telephone conferences in which Plaintiffs' counsel raised an issue with respect to the completeness of the response provided from the NCDA's office, specifically inquiring as to the absence of any inter-office emails within the documents produced. Inasmuch as the Plaintiffs had never served a discovery demand or a subpoena calling for production of any inter-office email from the Nassau County District Attorney's Office, they were not provided.

The Plaintiffs' objections to this Court as well as the motion they filed before the Magistrate seek to stretch the application and effect of the phrase, "including without limitation". The Court will note that this phrase is peppered throughout their demands, and is clearly employed to effect an overly broad demand that is ill-defined and expansive in scope, affording Plaintiffs, as they do now, to ever re-define what they believe is incorporated by that term. We understand, as the cases cited herein establish, that this term is illustrative rather than exhaustive. Thus, as Plaintiff's counsel's demands included demands for several distinct categories of documents, by employing the term, "including without limitation", Defendants and the NCDA

acknowledge that they were obligated to provide the contents of their file, not merely the suggested categories of documents delineated. The Court will note that in fulfilling its responsibilities in these respect, the non-party NCDA's office provided its entire file, without limitation.

On February 1, 2013, we produced to the Plaintiff 613 pages of documents responsive to their demands served upon the County of Nassau as well as responsive to the subpoena served upon the District Attorney's Office. With respect to the DA's file, we produced its entire 439 page file, in addition to CD-ROM discs containing (a) all crime scene photographs, (b) all crime scene videos and (c) all audio recordings of all radio transmissions pertinent to these several events. A complete copy, without limitation, of the DA's file that was provided to the Plaintiffs on February 1, 2013, which was entirely responsive to their demand and consistent with our promise to produce their entire file with limited redactions, is annexed to the Clarke Affidavit as Exhibit "C"[2]. The Court will note that the document production provided for many categories and types of documents that were not particularized within the Plaintiff's demand but nevertheless reflected the documents contained within the file, and therefore, reflected compliance with the "without limitation" condition referenced within Plaintiffs' demand. The documents produced included:

- Interview notes (000001 – 000035; 000056 – 000088; 000358 – 000368; 000371 – 000379; 000383 – 000386; 000390 – 000401; 000405 – 000407; 000434 - 000439)

---

[2] We have not provided herein the CD-ROMs nor the contents therein. The documents annexed as Exhibit "C" are "Confidential" and subject to a Confidentiality Agreement between the parties that has been So-Ordered by Magistrate Judge Lindsay, and are submitted to this Court under seal to conform to the terms of that Agreement. Consistent with this Court's Rules, hard copy only will be provided to chambers.

- Inter-Departmental Memos summarizing interviews (000036 – 000055; 000369 – 000370; 000380 – 000382; 000410 - 000411)

- Results of Ballistics Testing (000089 - 000101)

- Crime Scene Examination and Diagrams (000102 – 000106; 000313 – 000314; 000317; 000326; 000331 – 000333)

- Evidence Collection Log (000107; 000317; 000327)

- Records from the Medical Examiner's Office (000118 – 000121)

- Crime Scene Examination Reports (000122 – 000133; 000146; 000285 – 000288; 000299 – 000300; 000305 – 000312; 000315 – 000316; 000318 – 000323; 000325; 000329 – 000330; 000334; 000336 – 000338; 000348 - 000353)

- Calls For Service Report (000134 – 000137)

- Property Bureau Invoices (000138 – 000145; 000277 - 284)

- Search of Premises – Consent (000147; 000324)

- Correspondence from Plaintiff's Counsel (000148-000151; 000188 - 000193)

- Complaint and Jury Demand (000152 – 000187)

- Nassau County Police Department Indentification Section Report (000194 – 000195)

- Copies of Police Officers' Memo Book Entries (000196 – 000209; 000387 - 000389)

- Nassau County Police Department Homicide Activity Report (000210)

- Major Offense Bureau Activity Report (000211 – 214)

- Miscellaneous Notes (000215 – 000230; 000414)

- Nassau County Police Department Morning Report (000231)

- Nassau County Police Department Dispatcher Event Information Log (000232 – 000240)

- Background Event Chronology (000241 – 000251; 000254 – 000255)

14

- Nassau County Police Department Event Search (000252 – 000253; 000257 - 000265)

- Nassau County Police Department Unit Information (000256)

- Evidence Photograph of Kurt Doerbecker's Knife (000266)

- Media Reports (000267 – 000276)

- Contact Sheet of Crime Scene Photographs (000289 – 000298; 000301 - 000304)

- Crime Scene Photograph – Aerial View (000328)

- Contact Sheet  - photographs of deceased (000335)

- Contact Sheet of Crime Scene Photographs (000339 – 000347)

- Nassau County Police Department Serious Incident Time Log Worksheet (000354 – 000356)

- Nassau County Police Department Court Appearance Notification (000357)

- Nassau County Police Department Supporting Deposition (000402 – 000404)

- Nassau County Police Department Supporting Deposition (000408 – 000409)

- Nassau County Police Department Supporting Deposition (000412)

- Search Warrant Order (000415 – 000416)

- Affidavit in Support of a Search Warrant (000417 – 000431)

- Search Warrant Return (000432 – 000433)


As the Court can readily see, the NCDA responded without limitation, and produced not only those categories of documents specifically articulated in the demand, but in fact produced the entire file relied upon in preparing its final report.

The Nassau County District Attorney's Office did not produce any of the NCDA's office's internal emails nor did it produce any drafts of the NCDA's final report into this matter. These items were not included within the NCDA's file, nor were they demanded within the Plaintiff's document demand or subpoena.

A plain reading of the Plaintiffs' First Combined Discovery Requests as well as the subject subpoena served upon the non-party NCDA provides useful insight. We ask the Court to take note that the Plaintiffs' demand dated August 6, 2012 included definitions of several terms. The term "Document" was defined by the Plaintiffs' attorneys. The term "Email" was separately defined by the Plaintiffs' attorneys. These are clearly identified by Plaintiff's counsel as distinct categories of things that may be demanded. The Plaintiffs' counsel's definition of "Document" does not include "email". Therefore, in responding to their *document* demands, we logically understood that a demand for "documents" is separate and distinct from a demand for "email".

We are not inviting the Court to play at a game of semantics. The document request at issue demanded documents, and we followed Plaintiffs' definition of that term. To establish that this was not by any means illogical, we direct the Court's attention to Plaintiff's Document Demand number 5 (see Clarke Decl, Exh. "E"). This demand, addressed to the County of Nassau, sought production of emails exchanged between the police officers. We raise it to illustrate that Plaintiffs' counsel provided rather clear definitions and instructions, which we followed. The Plaintiffs' demand segregates and differentiates "documents" from "emails", and their document demands reflected that clear distinction. Yet Plaintiff's counsel now asks this

16

Court to order that the NCDA waived objections to the production of items (privileged pre-decisional drafts of its final report) that the Plaintiffs never demanded.

Plaintiffs' counsel refused to serve a more detailed discovery demand or subpoena, choosing instead to rely upon the mercurial and ever-flexible "without limitation" approach. Since mid-February Plaintiffs' counsel has understood that we never considered their demand to include emails, nor to include a demand for pre-decisional drafts of a report that they even now readily concede are protected by privilege. Through our good faith efforts to abide by our agreement to produce documents with limited redactions and objections, the Defendants and the NCDA have provided these Plaintiffs unfettered, transparent access to the records and materials from the NCDA and NCPD. Such efforts are evident in the scope and breadth of the documents provided, only a portion of which are annexed as Exhibits, some under seal,  to the Clarke Affidavit.

In Tigue v. United States DOJ, 312 F.3d 70, 2d. Cir. 2002 (Sotomayor, J.), the Second Circuit was confronted with a claim asserted by Plaintiffs, a white collar criminal defense law firm, that the Department of Justice had waived the deliberative process privilege through its conduct in releasing a portion of an otherwise secret memorandum. The Second Circuit rejected this contention, and ruled that the government had never waived its right to assert and rely upon its privilege notwithstanding having released a portion of the protected document.

Plaintiffs rely upon inapplicable cases to support their argument that a waiver of the privilege occurred. A sufficient privilege log, supported by an affidavit from a member of the

17

NCDA's office was provided to Plaintiff's counsel. Therefore, each case relied upon by Plaintiff's counsel to support their contention that the privilege was waived does not control here, and they make no argument that the privilege log or the supporting affidavit is in any way defective. Further, there remains an obvious dispute as to whether or not this privilege was waived in January or not. We notified Plaintiff's counsel 4 months ago that the NCDA's emails and their attachments were never contemplated as part of the NCDA's file (which was provided on February 1).

There should be little question that at no time did the non-party NCDA expressly waive the applicability of the deliberative process privilege with regard to internal, predecisional, working drafts of its final report. These items are far afield of what is contained within the NCDA's file, which was properly provided in discovery.

### Point IV.

### The Magistrate Did Not Abuse Her Judicial Discretion

A district court has "abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence," Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), or rendered a decision that "cannot be located within the range of permissible decisions," Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001). This simply cannot be said of the decision reached by Magistrate Judge Lindsay here. The Magistrate engaged in a balancing test and, recognizing a dispute as to the intent of the parties, ruled that she would not deem counsel's representation regarding

18

disclosure to be a waiver of the deliberative process privilege. This conclusion was well within the Court's discretion to make and need not be disturbed here.

In support of the privilege and in opposition to the motion to compel, Magistrate Judge Lindsay had before her the Affidavit of Douglas Noll, Esq., a member of the Nassau County District Attorney's Office. Mr. Noll expressed the abiding concerns of his office should this Court impose upon his office a directive to disclose pre-decisional materials as are demanded here. Mr. Noll attested, in pertinent part:

> Both weighty and less serious prejudice would result from the forced disclosure of preliminary drafts of the report ultimately released. On the more serious side, disclosure of preliminary drafts of the report would both reveal any possible disagreements in strategy, emphasis, and interpretation, and, more significantly, chill future open airing of disparate views in subsequent investigatory efforts. If each twist and turn in an investigation, thought process, and logical sequence is ultimately disclosable, future report drafters will hew to well-trodden, safe pathways and thought patterns. Questions about alternative possibilities will be less frequently raised. Unlikely scenarios will not be raised. Even provisional doubts as to the veracity of witnesses may not be expressed if those doubts, subsequently debunked, are to be made known in later, unrelated litigation. Any of these contingencies would have a severe negative impact on the professional law enforcement activities by the NCDA....Release of preliminary drafts of a document are an invitation to unwarranted, counter-productive micro-management of the delicate process of investigating a death and determining what legal consequences should accrue to one or more persons. The public is better served by a full, frank, confidential investigation with all due attention given to deliberative process, followed by a public accounting with the conclusions publicly stated and justified. The NCDA is properly accountable for its investigations and legal conclusions. It is, concomitantly, entitled to conduct those investigations with the knowledge that errors caught and corrected in mid-investigation will not be needlessly disclosed; that plausible but ultimately unsupported theories once investigated (and rejected) will not be resurrected; and that preliminary factual questions raised, explored, and rejected will not later be incorrectly deemed

19

final conclusions. See Noll Affidavit, annexed to Clarke Declaration as Exhibit "L".

There should be no dispute that in New York it is the District Attorney who decides whether and in what manner to prosecute a suspected offender. Baez v. Hennessy, 853 F.2d 73 (2nd Cir. 1988); U.S. v. Williams, 524 F.3d 209 (2d. Cir. 2008). In Dinler v. City of New York, 607 F.3d 923 (2d. Cir. 2010), the Second Circuit was confronted with an application for a writ of mandamus after a Magistrate had ordered, and a District Court had affirmed such order to the defendant to disclose privileged documents, in that case, NYPD Field Reports. The Second Circuit ultimately reversed the lower court, holding that the directive to compel the disclosure of such documents was an abuse of discretion. The Circuit Court found fault with the lower court which compelled disclosure of privileged materials when it failed to apply a strong presumption against lifting the privilege (in this case the law enforcement privilege which is also relied upon herein by the NCDA); in failing to require a showing of a compelling need for the materials from the Plaintiffs and in making a clearly erroneous assessment of the evidence when it held that Plaintiffs' need for the reports outweighed the strong presumption against disclosure. See Dinler, supra, at 947. The Circuit Court found that the District Court's Order – directing a department of the executive branch of the City of New York to disclose information that could risk the safety of employees was a clear abuse of discretion, for control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights. See Dinler at 947.

Control over criminal investigations as well as the analysis of the events and the "delicate process of investigating a death and determining what legal consequences should accrue to one

or more persons" compels the need that such processes be and remain confidential. The basis for the privilege to protect disclosure here is clear – the need for release of the materials is not.

Plaintiffs have failed to make the requisite showing required to meet their burden to establish that the Magistrate's ruling was clearly erroneous. The Magistrate did not abuse her discretion and appropriately recognized that the subject drafts are privileged and protected from disclosure, and further, the prejudice to be suffered by the NCDA would far outweigh the Plaintiffs' need for such materials – a need nowhere expressed in their submissions before this Court.

## CONCLUSION

The Nassau County District Attorney's Office respectfully requests that the Plaintiffs' objections be overruled.

Dated: June 12, 2013
         New York, New York

By: _____

Christopher Delamere Clarke (CDC 6160)
LEAHEY & JOHNSON, P.C.
120 Wall Street
New York, New York  10005
212-269-7308

21